**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-22429-KMM

CONRADO ERNESTO DIAZ-JOBA,

     Petitioner,

JEROME TOUSSAINT,

     Consolidated Petitioner,

v.

KROME NORTH SERVICE PROCESSING
CENTER, WARDEN, *et al.*,

     Consolidated Respondents.

                                        /

## ORDER

THIS CAUSE came before the Court upon the Petitions for Writ of Habeas Corpus (the "Petitions") filed by Petitioner Conrado Ernesto Diaz-Joba ("Diaz-Joba") (ECF No. 1) and Jerome Toussaint ("Toussaint") (ECF Nos. 6, 14, 16, 18).[1]  The Court issued an Order to Show Cause (the "OTSC") requiring Respondents to file one consolidated memorandum of fact and law to show cause why Diaz-Joba's Petition should not be granted.  *See generally* (ECF No. 4).  The Court then consolidated Diaz-Joba's case with Toussaint's upon a finding of common questions of law or fact pursuant to Federal Rule of Civil Procedure 42(a) and ordered Respondents to file one consolidated response addressing both Petitioners.  *See* (ECF No. 5).[2]  Respondents thereafter filed a Response

---

[1] Toussaint filed several versions of his habeas petition.  The Court ordered Respondents to address Toussaint's latest petition, which is the operative Amended Petition ("Am. Pet.") to which the Court refers herein.  *See* (ECF Nos. 18, 21).

[2] One consolidated petitioner, Rosbeli Manuel Barrios Perez, was dismissed following Respondents' Expedited Motion to Vacate the portions of the OTSC barring transfer as to Petitioner Barrios Perez to allow for voluntary departure.  *See* (ECF Nos. 10, 11).

to Order to Show Cause (the "First Response" or "First Resp.") (ECF No. 9), and Diaz-Joba filed a Reply thereto (the "Diaz-Joba Reply") (ECF No. 12).[3]   Following Toussaint's operative Amended Petition and Motion for Leave to Proceed In Forma Pauperis (ECF Nos. 18, 19), the Court granted Toussaint *in forma pauperis* status and ordered Respondents to show cause in response to that Amended Petition (ECF No. 21).   Respondents filed a response thereafter (the "Second Response" or "Second Resp."). (ECF No. 25).   No further replies have been filed, and the time to do so has passed.

The Petitions are now ripe for review.   As set forth below, Diaz-Joba's Petition is DENIED and Toussaint's Petition is GRANTED IN PART as to his entitlement to a bond hearing.   The Court makes no determination as to whether Toussaint is in fact entitled to be released following such a hearing.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court briefly reviews the factual background as to each Petition.

### A.  Petitioner Diaz-Joba

Diaz-Joba alleges that he has resided in the United States for forty-six years after entering the country on or about May 10, 1980.  Diaz-Joba Reply at 1; First Resp. at 2; (ECF No. 9-1).[4]   A

---

[3] Diaz-Joba filed a Pro Se Notice to the Court and Motion to Expedite Ruling, wherein he claimed that the Reply filed in his name was not written or filed by him and stated that he "does not know" how it "came to be filed under his name." (ECF No. 29) at 1–2.  Diaz-Joba further states his primary language is Spanish and he "does not understand English well enough to have written a reply to the government's Response.  It would have been impossible for him to do so." *Id.* However, the Court notes that the Notice was also written in reasonably fluent English, that both documents reflect a very similar signature, and the Reply was notarized by a Benecia Townsend. *See id.* at 5; Reply at 9.  On this basis, the Court cannot conclude that the Reply was fraudulently filed, especially where it reflects specific details of Diaz-Joba's immigration history that would not have been publicly known.  In any event, neither document is dispositive to the relief adjudicated below, and therefore the Court need not resolve this purported discrepancy.

[4] The Court uses the CM/ECF pagination, which appears in the headers of all filings, throughout this Order.

native of Cuba, he was paroled into the United States at or near Key West, Florida and continued to live on release until November 18, 1988, when he was convicted in this District of conspiracy to possess with intent to distribute cocaine and received a four-year sentence. First Resp. at 2; (ECF No. 9-2). On February 13, 1991, his parole was terminated and he was excluded on July 30, 1992 pursuant to an Immigration Judge's order. Diaz-Joba Reply at 2; First Resp. at 2; (ECF Nos. 9-2, 9-4). Diaz-Joba was also convicted of delivery of a controlled substance/cocaine within 1,000 feet of a school in the Circuit Court of Cook County, Illinois on May 8, 2007. First Resp. at 2; (ECF No. 9-3). Following completion of his four-year sentence, on November 6, 2008, Diaz-Joba encountered Respondent U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"), which detained him until his release under an Order of Supervision ("OSUP") on February 10, 2009. Diaz-Joba Reply at 2; First Resp. at 2; (ECF No. 9-2).

Diaz-Joba remained on supervised release without incident until November 16, 2025, when he attended his OSUP reporting appointment and ICE ERO revoked his OSUP and took him into custody. Diaz-Joba Reply at 2; First Resp. at 2; (ECF No. 9-2). At that time, ICE ERO "conducted an informal interview" to inform him that his OSUP had been revoked to "effectuate his removal from the United States," and he was thereafter transferred to Respondent Krome North Service Processing Center ("Krome"), where he remains detained. Diaz-Joba Reply at 2; First Resp. at 2; (ECF Nos. 9-2, 9-6). Diaz-Joba alleges that he has been detained for a prolonged period without a bond hearing or valid travel document to effectuate his removal. Diaz-Joba Reply at 2.

On this basis, Diaz-Joba asserts four Grounds: (1) prolonged immigration detention in violation; (2) continued detention with no significant likelihood of removal in the reasonably foreseeable future; (3) reliance on a decades-old exclusion order such that continued detention is not "supported by a current, individualized determination based on present-day facts"; and (4) lack

of meaningful review of the continued detention before a neutral decisionmaker. *See* Diaz-Joba Pet. at 6–7. Thus, Diaz-Joba asks the Court to order his immediate release from immigration detention, or in the alternative to order a bond hearing before an Immigration Judge. *Id.* at 7.

Respondents contend that on December 16, 2026, ICE ERO determined that Diaz-Joba would be removed to Mexico as a safe third country, and he was transferred to El Paso Camp East Montana in El Paso, Texas in preparation for that removal. First Resp. at 2; (ECF Nos. 9-7, 9-8). According to Respondents, ICE ERO attempted to effectuate this removal on February 26, 2026, but Diaz-Joba "refused to cooperate with the removal process by refusing to exit the holding room and stated he would not go to Mexico." First Resp. at 2–3; (ECF No. 9-2). He was then transferred back to Krome on February 28, 2026, and was then transferred to Port Isabel Service Processing Center in Los Fresnos, Texas in preparation for another removal attempt to Mexico. First Resp. at 3; (ECF No. 9-2). After once again failing to cooperate with his removal, Diaz-Joba was returned to Krome, where he remains. First Resp. at 3; (ECF No. 9-2). Diaz-Joba does not address these contentions directly but argues his belief that Respondents have not contacted Mexican officials about accepting him, and therefore that there "is no evidence before the court that Mexico is likely to accept Petitioner." Diaz-Joba Reply at 6.

### B. Petitioner Toussaint

Toussaint has resided in the United States since applying for admission at the Hidalgo Port of Entry in Hidalgo, Texas on June 2, 2022. First Resp. at 6. A native of Haiti, he was paroled into the country on the date of his arrival after presenting himself to U.S. Customs and Border Protection ("CBP") officers at the Hidalgo Port of Entry. *Id.*; (ECF Nos. 9-9, 9-10). On that same day, CBP issued a Notice to Appear ("NTA") charging Toussaint as an arriving alien with inadmissibility pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) as not in possession of a valid unexpired

immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act ("INA").  First Resp. at 6; (ECF No. 9-9).  He was then released on parole pending his removal proceedings.  First Resp. at 7; (ECF No. 9-10).

Toussaint remained on release until August 22, 2025, when he was arrested in West Palm Beach, Florida for:  Domestic Battery by Strangulation, in violation of Florida Statute § 784.041(2)(a); Aggravated Assault with a deadly weapon without intent to kill, in violation of Florida Statute § 784.041(1A); and False Imprisonment, in violation of Florida Statute § 787.02(2).  First Resp. at 7; (ECF No. 9-11).  This arrest was then "No Filed" on September 19, 2025.  First Resp. at 7; (ECF No. 9-12).  On August 23, 2025, ICE ERO submitted an immigration detainer to the Palm Beach County Jail upon learning of Toussaint's arrest, and served him with an arrest warrant on August 26, 2025 before booking him into Krome on August 29, 2025.  First Resp. at 7; (ECF Nos. 9-13, 9-14).  On March 6, 2026, Toussaint requested a custody redetermination to which request an Immigration Judge ordered a No Action, and Toussaint waived appeal of that order.  First Resp. at 7; (ECF No. 9-15).  He remains detained at Krome pending the outcome of his removal proceedings.  First Resp. at 7; (ECF No. 9-14).

On this basis, Toussaint asserts four Grounds all alleging in the main that his continued detention violates the due process clause of the Fifth Amendment and that he has been wrongly classified as detained pursuant to 8 U.S.C. § 1225(b)(2) rather than § 1226, when being detained under the latter would make his detention discretionary and entitle him to a bond hearing. Toussaint Am. Pet. at 6–7.  Thus, Toussaint asks the Court to direct Respondents to bring him to Court and explain why he should not be released or order that he be released immediately, either with or without bond.  *Id.* at 7.

### C. Procedural History

In the OTSC, the Court assumed jurisdiction over Diaz-Joba's Petition, ordered that he was not to be transferred out of this District until the instant proceedings are terminated, ordered Respondents to file one consolidated memorandum of law and fact to show cause why Diaz-Joba's Petition should not be granted, and deferred consideration of the other relief requested in the Petition until after the Response and Reply had been reviewed.  *See* (ECF No. 4) at 2–3.  In its Paperless Order Consolidating Cases, the Court ordered that all provisions of the OTSC except for the time to respond remained in force as to Toussaint upon consolidation.  *See* (ECF No. 5).  The First and Second Responses and Diaz-Joba's Reply have since been filed.  *See* (ECF Nos. 9, 12, 25).  Respondents argue that the Court is without jurisdiction to review Diaz-Joba's Petition as he is subject to a final order of removal, and that Toussaint is considered an arriving alien such that he is properly detained pursuant to 8 U.S.C. § 1225(b)(2).  *See generally* First Resp.; Second Resp.

Toussaint was transferred to another detention facility two different times in violation of the OTSC's requirement that the Petitioners' detention be maintained in this District.  *See* (ECF Nos. 24, 30–33).  The first transfer was inadvertent and to remedy such error, Respondents represented to the Court that "a banner was placed in ICE's case management system along with another comment to further reflect the prohibition of transfer."  (ECF No. 31) at 1.  Relatedly, in another case before the Court where Respondents had violated a different but substantively identical order, Respondents represented to the Court that "Deportation Officers now see 'alert banners' in all habeas cases that instruct[] them 'to seek further guidance before initiating any transfer of a petitioner, thereby mitigating the risk of inadvertent transfers[.]"  *See Olivares Zapata v. Ripa*, No. 1:26-cv-21316 (S.D. Fla. June 5, 2026) (ECF No. 29) at 8.  The second transfer was due to the forced evacuation of Krome in light of nearby brush fires.  (ECF No. 32) at 1.

6

Upon notice of the second transfer, the Court ordered Respondents to show cause as to "why they should not be sanctioned for their repeated violations of the Court's Order," requiring Respondents to at least address the following:

> (1) the reason Petitioner Toussaint was transferred, including why he was specifically transferred out of the district rather than to another facility within the district; (2) how Petitioner Toussaint could have been transferred out of the district if Respondents have really employed the banner system; (3) how the banner system works; (4) when Petitioner Toussaint will be transferred back to the Southern District of Florida; and (5) why Respondents' counsel did not know the reason Petitioner Toussaint was transferred when Respondents submitted the Notice at (ECF No. 32).

(ECF No. 33). The Court further set a show cause hearing which was held on June 30, 2026 at 2:00 PM before the Court, at which hearing Toussaint was personally produced after being transferred back to this District. *See id.*; (ECF Nos. 34–35).

This Order memorializes and supplements but does not modify the rulings made in open court during the show cause hearing. At that hearing, the Court ordered Respondents to file a report with the Court in response to certain questions posed therein that Respondents were unable to answer satisfactorily even after consulting with ICE ERO acting Assistant Field Office Director Jahmal Ervin, who is stationed at Krome. Respondents have now filed that response, and the Court will address the contents thereof by separate order. *See* (ECF Nos. 37, 38, 42). After addressing those topics at the hearing, and as further elaborated below, the Court then ordered that Toussaint receive a bond hearing on or before June 7, 2026, such that his Petition is granted in part as to his entitlement to a bond hearing. The Court makes no determination as to whether Toussaint is in fact entitled to be released following such a hearing.

## II.      LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Further, for "'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court's habeas jurisdiction extends to challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

III.   DISCUSSION

    a.   **The Policy**

The new policy underlying this action, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by Respondent U.S. Department of Homeland Security ("DHS") in coordination with the Department of Justice and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1)." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission. *See generally*

8

ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). On February 18, 2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the APA. *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including the order vacating *Matter of Yajure Hurtado*. *See* Order from Ninth Circuit Court of Appeals, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026). Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country. The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez*

*v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at \*6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases).  Nevertheless, a distinct split has emerged since.  *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966, 2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

The Fifth and Eighth Circuits have both held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond.  *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination.  The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings.  *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026).

### b.  Administrative Exhaustion

As an initial matter, the Court agrees with Petitioners that administrative exhaustion would

be futile.  Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted).  This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA.  *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at *3 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioners' detention pursuant to § 1225(b)(2)(A) to the extent *Matter of Yajure Hurtado* continues to be in effect while the Ninth Circuit appeal in *Maldonado Bautista* remains pending.  Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c.  Statutory Framework

Turning then to the merits of the Petitions, as an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3.  The Eleventh Circuit has now directly answered this question:  § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 175 F.4th at 1261.  In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking

11

admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at *5–20. As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim. *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined. *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A). Such discretionary parole, however, "shall not be

regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General:  (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization.  *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework."  *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269.  The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[5]

The crucial determination, therefore, is whether a person found within the United States

---

[5] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA.  The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Such a finding would require a reading that all "applicants for admission," which is any alien present without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 175 F.4th at 1269 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.
>
> We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

14

*Hernandez Alvarez*, 175 F.4th at 1285.

### d.  Petitioners' Detention

#### i.  Petitioner Diaz-Joba

Because federal courts are "courts of limited jurisdiction" vested with a *sua sponte* obligation to ensure their own jurisdiction over any matter, the Court starts first with Respondents' arguments that the Court may not review Diaz-Joba's claims under 8 U.S.C. § 1252(g).  First Resp. at 3–4; *Gunn v. Minton*, 568 U.S. 251, 256 (2013).  Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  According to Respondents, Diaz-Joba is "asking this Court to prevent ICE from executing his final removal order" by seeking re-release.  First Resp. at 4.  The Court agrees with Respondents that the present posture of Diaz-Joba's case squarely falls within the purview of § 1252(g), as a final order of removal has been entered against him and any release would be a challenge to ICE's discretionary power to detain pending removal under 8 U.S.C. § 1231(a)(6).  *See* First Resp. at 4; 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond the [90-day] removal period[.]"); *Camarena v. Director, Imm. & Customs Enforcement*, 988 F.3d 1268, 1273 (11th Cir. 2021) (finding § 1252(g) bars jurisdiction as to execution of removal orders unless the validity or existence of removal order is challenged).

Although Diaz-Joba contends that he is not challenging the commencement, adjudication, or execution of removal orders such that there is no jurisdictional bar, the Court disagrees.  *See* Diaz-Joba Reply at 3.  This is plainly a challenge to ICE's execution of removal orders where such

removal order has been entered. The only potentially availing argument, then, is that Diaz-Joba's detention has been unreasonably prolonged in violation of his due process rights such that despite Respondents' authority to execute such orders, there is nevertheless a constitutional violation.

The Eleventh Circuit has explained that to state a claim under *Zadvydas*, a petitioner must show detention following a removal order in excess of six months as well as "evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Diaz-Joba attempts to reverse this burden, arguing that ICE has failed to effectuate his removal for more than 30 years since the order of removal was initially entered and that there "is no evidence before the court that Mexico is likely to accept" him. Diaz-Joba Reply at 5–6. However, Diaz-Joba has not provided any "evidence of a good reason to believe" that Mexico is not willing or likely to accept him or that ICE lacks the ability or intention to effectuate his removal, which is the showing he must first make to shift the burden back to ICE to show why removal is significantly likely. *See Zadvydas*, 533 U.S. at 1052; *Akinwale*, 287 F.3d at 1052.

Here, ICE has repeatedly attempted to remove Diaz-Joba to Mexico, and it is his own actions that have resulted in the failure of those removal attempts. First Resp. at 3; (ECF Nos. 9-2, 9-7). And, while Diaz-Joba has now been detained in excess of the presumptively valid six-month period, that period is "tolled, however, if the alien acts to prevent his removal." *See Guo Xing Song v. U.S. Att'y Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013). Accordingly, the Court finds that it lacks jurisdiction to consider the requested relief of bond or release in this post-removal period, and no due process violation has occurred. Because the Court lacks jurisdiction, it will not move on to otherwise entertaining the merits of Diaz-Joba's Petition. *See Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).

### ii. Petitioner Toussaint

As noted above, the Court already granted Toussaint a bond hearing, with no findings as to the outcome of such a hearing, in open court on June 30, 2026. Reviewing Respondents' arguments to the contrary, they argue that because he "was an alien seeking lawful entry after inspection and authorization by an immigration officer," he is unlike the petitioners in *Hernandez Alvarez* and is "clearly an arriving alien who was seeking lawful entry after inspection because he presented himself at the Hidalgo Port of Entry." Second Resp. at 2–3. According to Respondents, Toussaint maintained this status as an arriving alien indefinitely even though he was paroled in the country, because DHS's discretionary parole of an alien "shall not be regarded as an admission of the alien and when the purposes of such parole shall . . . have been served the alien shall forthwith return or be returned to the custody from which he was paroled," such that thereafter his "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* at 3–4; 8 U.S.C. § 1182(d)(5)(A).

The INA does not define the phrase "arriving in the United States," and the Court therefore turns to the phrase's ordinary meaning. *See Bondi v. VanDerStok*, 604 U.S. 458, 477 n.4 (2025) (explaining that statutory interpretation requires courts to "interpret the words Congress enacted 'consistent with their ordinary meaning'" (citation omitted)). Merriam-Webster defines "arrive" or "arriving" as "to reach a destination" or "to make an appearance[,] to come upon the scene." *Arrive*, Merriam-Webster's Online Dictionary (last updated July 1, 2026), https://www.merriam-webster.com/dictionary/arrive. Read pursuant to its ordinary meaning, an alien "arriving in the United States" thus refers to an alien "who has reached the border or a port of entry," and "would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States." *See*

17

*Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 90–91 (D.D.C. 2025) ("Read according to its plain meaning, a noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here.").

The ordinary meaning of the phrase is supported by the statutory context.  For example, nothing in § 1225 suggests that "arriving in the United States" is an "interminable . . . status that attaches to a noncitizen upon arrival."  *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306 (E.D.N.Y. 2025) (cleaned up and citation omitted), *appeal dismissed*, 2026 WL 1208948 (2d Cir. Feb. 25, 2026).  Rather, § 1225's use of "arrive," "arrival," and "arriving" appears "to refer to a process that occurs upon physical entry into the" country.  *See Qasemi*, 2025 WL 3654098, at *6 (citation omitted); *see also, e.g.*, 8 U.S.C. § 1225(b)(1)(F) ("[A]n alien . . . who arrives by aircraft at a port of entry."); *id.* § 1225(b)(2)(C) ("[A]n alien . . . who is arriving on land (whether or not at a designated port of arrival)[.]"); *id.* § 1225(d)(2) (authorizing the detention of "arriving aliens" on "the vessel or at the airport of arrival").  In contrast, an "applicant for admission" under § 1225(a)(1) describes "a status that does not conclude until the non-citizen is formally *admitted*," rather than upon arrival.  *See Qasemi*, 2025 WL 3654098, at *6 (emphasis added).

Moreover, § 1225(b)(1), entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," contemplates the inspection and screening of arriving aliens.  This requirement is not reimposed on aliens like Toussaint who are already present in the interior after having been paroled into the United States.  Indeed, nothing in the statute requires an alien whose parole has terminated to return to a port of entry for renewed inspection or screening.  *See Linarez v. Stamper*, No. 1:26-CV-00101-JAW, 2026 WL 592294, at *6 (D. Me. Mar. 3, 2026) ("The expiration of [petitioner's] parole does not renew the requirement

to return to a port of entry and undergo a new inspection or screening." (citations omitted));
*Walizada v. Trump*, No. 2:25-CV-00768, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025) ("No inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired."). It follows then that "[t]he provisions applying to 'arriving aliens' thus logically apply just to those noncitizens upon their presentation at the border of the United States." *Qasemi*, 2025 WL 3654098, at *6.

For the foregoing reasons, the Court finds that Toussaint finished "arriving in the United States" for purposes of § 1225(b)(1) upon his parole into the United States. *See, e.g.*, *Alfonso v. Current Warden, Miramar ICE Field Off.*, No. 26-60257-CIV, 2026 WL 1083330, at *5 (S.D. Fla. Apr. 22, 2026) (finding that because petitioner was paroled into the United States and "has been present in the United States since 2022[, he is thus] not 'arriving' in any ordinary sense of the word"). Accordingly, as parole does not constitute "an admission of [an] alien," Toussaint is properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1). *See* 8 U.S.C. § 1182(d)(5)(A).

However, while Toussaint may properly be considered an applicant for admission under this definition, the Court also finds that he is not "seeking admission" within the meaning of § 1225(b)(2)(A). For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Toussaint was somehow attempting to secure admission into the country when he was detained following his unrelated criminal arrest. Further, § 1225 requires that an "examining immigration officer" determine that an alien be one "seeking admission" to invoke mandatory detention pending a § 1229a proceeding, and there is no indication in the materials provided by Respondents that such determination occurred when Petitioner was detained in 2025. 8 U.S.C. § 1225(b)(2)(A); *Lopez-Campos v.*

19

*Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).

As a final thought, the Court finds that Respondents' position here is a disingenuous reading of and categorically foreclosed by the holding in *Hernandez Alvarez*. The Eleventh Circuit specifically noted that rather than allowing for "unfettered authority to detain," it was apparent "that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Hernandez Alvarez*, 175 F.4th at 1285. The petitioners in *Hernandez Alvarez* were detained by immigration authorities in the interior of the United States following traffic stops, and the Eleventh Circuit emphasized this point in finding that they "were not applying for entry in any literal sense when they were detained . . . nor were they taking any cognizable step to obtain the rights and privileges of lawful entry. They were only present in the country. They were not seeking or pursuing any object, let alone 'lawful entry.'" *Id.* at 1269. Respondents' position here seeks to entirely circumvent the holding in *Hernandez Alvarez* by taking the approach of a perpetual parole as the basis for mandatory detention, but this argument ultimately flies in the face of the Eleventh Circuit's determination that an alien found in the interior by immigration authorities following detention for a non-immigration related law enforcement encounter, such as a traffic stop, is not subject to mandatory detention as an arriving alien under § 1225(b)(2).

For the reasons set forth above, the Court finds that § 1226(a) and its implementing regulations govern Toussaint's detention, not § 1225(b)(2)(A), and therefore that Toussaint is detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241. Accordingly, Toussaint is entitled to an individualized bond hearing as a detainee under § 1226(a). The Court will not reach the merits of Toussaint's due process claims because the relief requested in the other Counts is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026

20

WL 788019, at *6.  Should Respondents fail to provide Toussaint with a bond hearing as ordered herein, he may renew any due process claims.

## IV.    CONCLUSION

Accordingly, UPON CONSIDERATION of the Petitions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Diaz-Joba's Petition (ECF No. 1) is DENIED and his Pro Se Notice to the Court and Motion to Expedite Ruling (ECF No. 29) is DENIED AS MOOT to the extent this Order has now been entered adjudicating his Petition.  Toussaint's Amended Petition (ECF No. 18) is GRANTED IN PART as to his entitlement to a bond hearing.  As ordered in open court, on or before July 7, 2026, Respondents shall provide Toussaint with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release him.  Such bond may not be denied on the basis that Petitioners are detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this ___6th___ day of July, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record